2024 PA Super 296

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ROBERT WILLIAM RANSOM | : | |
| Appellant | : | No. 549 MDA 2024 |

Appeal from the Judgment of Sentence Entered November 8, 2023
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0000742-2020

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

OPINION BY BOWES, J.:                     **FILED: DECEMBER 12, 2024**

Robert William Ransom appeals from the aggregate sentence of 441 months and three days to 946 months of imprisonment following his convictions arising from shooting a Pennsylvania State Police ("PSP") trooper. We affirm.

We glean the following background from the certified record.  On February 29, 2020, PSP Trooper Jason Brindle was riding in a marked cruiser with a trooper in training, Michael Garbacik.  Trooper Brindle observed a speeding vehicle and conducted a traffic stop.  He determined that Appellant was the driver and noted the odor of burnt marijuana emanating from the vehicle.  The trooper asked Appellant if there were any weapons in the vehicle, to which Appellant responded in the negative.  Trooper Brindle then ordered Appellant out and patted him down, focusing primarily on the waistband and pocket areas, finding no weapons.  After conducting field sobriety tests and

Appellant admitting to having a marijuana "roach" in the vehicle, Trooper Brindle decided to arrest Appellant and placed a cuff around one of Appellant's wrists.

At this point, Appellant began to resist by pulling away. Following a brief scuffle, Troopers Brindle and Garbacik took Appellant to the ground as they attempted to restrain him. Appellant was face down and had his free arm under his body along his waistband. He began shouting profanities at the troopers, calling them "white mother fuckers" and accusing them of harassing him. *See* N.T. Trial, 9/25/23, at 115. The troopers were eventually able to get Appellant's other arm behind him and cuffed. Trooper Brindle again patted Appellant's hips and rear pockets while Appellant remained prone on the ground, finding nothing additional.

The troopers lifted Appellant and began escorting him to the patrol vehicle. While walking, Appellant hunched over and moved one of his legs up and down. Appellant was then placed against the patrol vehicle. Before the troopers could put Appellant inside, however, he retrieved a handgun from somewhere on his person and fired a single round, striking Trooper Brindle in the groin region and causing one of the magazine pouches on his duty belt to explode. Appellant did not immediately discard the firearm, which he held by the grip, but the troopers were able to disarm him. Trooper Brindle was life-flighted to York Hospital and underwent immediate surgery to address significant injuries to his lower abdomen and groin.

The Commonwealth charged Appellant with numerous offenses on February 29, 2020, including attempted murder of a law enforcement officer and aggravated assault as to both troopers. The matter endured a lengthy and litigious procedural history which, as will be discussed in more detail below, included Appellant filing a motion to dismiss pursuant to Pa.R.Crim.P. 600 and the Commonwealth filing a motion for recusal of Franklin County Court of Common Pleas Judge Todd Sponseller after the judge granted a motion in *limine* in favor of Appellant. Judge Sponseller ultimately recused, and the case was thereafter assigned to Judge Mary Beth Shank. Following briefing from the parties and several court appearances, Judge Shank denied Appellant's Rule 600 motion and a motion from the Commonwealth to reconsider the decision pertaining to the motion in *limine*.

The case proceeded to a jury trial on September 25, 2023, wherein the Commonwealth presented evidence consistent with the above. The Commonwealth also called as an expert witness Joseph Horton, a firearm and toolmark examiner employed by the PSP. *Inter alia*, Mr. Horton attested that the handgun in question had a thumb safety that was required to be depressed into the firing position to discharge the weapon, and that the average trigger pull on the handgun was approximately ten and one-half pounds, akin to the weight of a bag of potatoes in the grocery store.

Notably, following the first day of trial, one of the empaneled jurors drove another one ("Excused Juror") home as a favor. During the drive, Excused Juror relayed that she had multiple convictions for driving under the

influence ("DUI"), and that she believed the most recent, which caused her to lose her license, was charged by Trooper Brindle. Based on the testimony she heard during the first day of trial, Excused Juror criticized the trooper's conduct during Appellant's stop and believed it was unnecessarily prolonged, like with her own DUI.

Prior to the commencement of testimony on the second day of trial, the good Samaritan juror reported this discussion to court staff. The trial court, along with a representative from the Commonwealth and defense counsel, conducted an interview with Excused Juror. She admitted that she had four DUI convictions, despite previously listing on the *voir dire* questionnaire that she only had one. Excused Juror also admitted that she was highly irritated when she was subjected to field sobriety testing for her last DUI and believed that Appellant was likewise subjected to overly onerous requirements during the encounter. Defense counsel was able to confirm during that discussion that Excused Juror's prior interaction was, in fact, with a PSP trooper other than Trooper Brindle. When asked, Excused Juror indicated that she could be fair and impartial, but also questioned whether she was in trouble for discussing the case in violation of the court's instructions. Over Appellant's objection, the trial court dismissed Excused Juror and promoted an alternate juror.

At the conclusion of trial, the jury convicted Appellant of the following offenses: one count of attempted murder of a law enforcement officer as to Trooper Brindle; two counts of aggravated assault, one as to each trooper;

and one count each of firearms not to be carried without a license, recklessly endangering another person, resisting arrest, and assault on a law enforcement officer – discharge firearm.[1] The trial court subsequently sentenced Appellant as indicated hereinabove. Appellant filed a timely post-sentence motion, which the court denied after a hearing held on March 18, 2024.

Appellant timely appealed and complied with the court's order to file a statement of errors pursuant to Pa.R.A.P. 1925(b). The court authored a responsive Rule 1925(a) opinion, directing us to prior opinions entered during this case.

Appellant presents eight issues for our consideration:

I. Whether the evidence presented at trial was insufficient to prove Count 2: attempted murder of a law enforcement officer, in that the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] . . . had an intent to kill Trooper Brindle?

II. Whether the evidence presented at trial was insufficient to prove Count 3: aggravated assault - causing serious bodily injury to an enumerated person, in that the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] acted intentionally, knowingly[,] or recklessly?

III. Whether the evidence presented at trial was insufficient to prove Count 4: aggravated assault - causing bodily injury to an enumerated person, in that the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] acted intentionally or knowingly?

_____

[1] The jury acquitted Appellant of attempted murder of a law enforcement officer as to Trooper Garbacik.

- 5 -

IV. Whether the evidence presented at trial was insufficient to prove Count 4: aggravated assault - causing bodily injury to an enumerated person, in that the Commonwealth failed to prove beyond a reasonable doubt that. . . the injury to Trooper Garbacik was an impairment of physical condition or caused substantial pain?

V. Whether the evidence presented at trial was insufficient to prove Count 10: assault of a law enforcement officer causing bodily injury by discharge of firearm, in that the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] acted intentionally or knowingly?

VI. Whether the Honorable Court erred in not dismissing all counts when, excluding time due to COVID[-]19 courthouse closures and continuances and motions filed by the defense, [Appellant] had been incarcerated for approximately 560 days without trial in violation of Pennsylvania Rule of Criminal Procedure 600?

VII. Whether it was an abuse of discretion to excuse a juror simply because she showed distrust of state police?

VIII. Whether the crimes of attempted murder, assault of a law enforcement officer[,] and aggravated assault on a law enforcement officer arose from a single act, sentencing [Appellant] on each separately is a violation of the Double Jeopardy clause on the constitutions of both the United States and Pennsylvania?

Appellant's brief at 3-5 (cleaned up).[2]

In his first five claims, Appellant argues that the Commonwealth provided insufficient evidence as to the following crimes: attempted murder of a law enforcement officer, aggravated assault–causing serious bodily injury to an enumerated person, aggravated assault–causing bodily injury to an

_____

[2] To our significant disappointment and disapproval, the Commonwealth elected not to file an appellate brief in this matter.

- 6 -

enumerated person, and assault of a law enforcement officer.[3]   Since

Appellant advances related arguments as to each count, we address these

issues together.

We consider Appellant's position mindful of the following well-settled

standard of review:

> When reviewing a [sufficiency] claim, we face a question of law. Accordingly, our standard of review is *de novo*.  We view the evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor.  Through this lens, we must ascertain whether the Commonwealth proved all of the elements of the crime at issue beyond a reasonable doubt.
>
> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, we may not weigh the evidence and substitute our judgment for the factfinder.  Any doubts regarding a defendant's guilt may be resolved by the factfinder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances.

***Commonwealth v. Roberts***, 293 A.3d 1221, 1223 (Pa.Super. 2023)

(cleaned up).

_____

[3] Despite raising five separate questions as to sufficiency, Appellant only advances four distinct argument sections in his brief pertaining to these claims, in violation of the Pennsylvania Rules of Appellate Procedure.  ***See*** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part-in distinctive type or in type distinctively displayed-the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent[.]").  Counsel is cautioned to abide by our procedural rules in the future.

With respect to a conviction for attempted homicide, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). Further, "[a] person commits murder of a law enforcement officer of the first degree [when he] intentionally kills a law enforcement officer while in the performance of duty knowing the victim is a law enforcement officer." 18 Pa.C.S. § 2507(a).

The Pennsylvania Crimes Code states that a person may be convicted of aggravated assault if he "attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) . . . , while in the performance of duty." 18 Pa.C.S. § 2072(a)(2). Both police officers and state law enforcement officials are codified as other enumerated persons. *See* 18 Pa.C.S. § 2702(c). Finally, "[a] person commits a felony of the first degree [when he] attempts to cause or intentionally or knowingly causes bodily injury to a law enforcement officer, while in the performance of duty and with knowledge that the victim is a law enforcement officer, by discharging a firearm." 18 Pa.C.S. § 2702.1(a)(1).

The thrust of Appellant's primary argument is that the Commonwealth failed to prove that he had the requisite *mens rea*, or state of mind, for these offenses. More particularly, he advances nearly identical arguments in each corresponding section of his brief:

> Appellant was handcuffed at the time the shot was fired and was incapable of pointing the firearm at anyone. Prior to being handcuffed, despite ample opportunity, and the interaction already being hostile, . . . Appellant made no move for the firearm and did not attempt to fire a shot at either trooper. It makes little sense that Appellant, once on the ground and detained by law enforcement, would choose that time to attempt to kill Trooper Brindle. Appellant was trying to dispose of the firearm before being taken into custody and the discharge of the firearm was unintentional.

*See*, *e.g.*, Appellant's brief at 8-9.

Appellant additionally maintains that, as to aggravated assault against both troopers, the Commonwealth did not prove knowing or reckless behavior. *Id*. at 9. Finally, with respect to aggravated assault specifically directed to Trooper Garbacik, Appellant adds that the injury "was superficial, barely a scraped knee, and didn't cause an impairment of physical condition or substantial pain." *Id*. at 11.

In addressing these claims, the trial court noted that Appellant had numerous opportunities during the encounter in which to inform the troopers that he had a firearm, but he neglected to do so. *See* Trial Court Opinion, 3/18/24, at 8. It further recounted the testimony that Appellant became increasingly agitated throughout the arrest, calling the troopers "white mother fuckers" during the scuffle and accusing them of harassing him. *Id*. at 9. The court also highlighted the fact that Appellant was holding the pistol by its grip at the time it was fired and did not drop the firearm after discharge. Rather, the troopers had to forcibly knock it away from his hand. *Id*. Additionally, the court reiterated that the Commonwealth's expert testimony established

that Appellant had to ensure a thumb safety was disengaged and utilize ten and one-half pounds of pressure to depress the trigger, undercutting the claim that the shooting was accidental. Thus, the court concluded that a jury had sufficient evidence to find that Appellant intended to shoot Trooper Brindle and kill him. *Id*.

Further, the court rejected the argument that the Commonwealth did not prove aggravated assault as to Trooper Garbacik due to a lack of the trooper's injuries. It stated that the jury specifically found that Trooper Garbacik did **not** suffer bodily injury, and thus the assault conviction was premised upon Appellant's attempt to cause the same. *Id*. at 11. Based on the above, the court found that the circumstantial evidence of Appellant's intent likewise established the necessary mental state required for the other assault crimes. *Id*.

Upon review, we agree with the trial court that the Commonwealth presented sufficient evidence to sustain all of Appellant's convictions. The testimony at trial showed that Appellant lied about possessing a firearm on numerous occasions. Once he realized that he was being arrested, he offered significant resistance. Despite being handcuffed, he managed to grasp a firearm by the handle and apply over ten pounds of pressure on the trigger, striking Trooper Brindle and causing serious bodily injury. Appellant further did not drop the firearm of his own initiative, which belies his claim that the discharge was accidental. This finding of intent to kill Trooper Brindle would

apply with equal force to the convictions of aggravated assault and assault of a law enforcement officer wherein that trooper was the victim. As noted above, assault of a law enforcement officer requires specific intent to cause harm, whereas aggravated assault may be proven with either a specific intent to cause harm or actually doing so recklessly.

With respect to the charge of aggravated assault as to Trooper Garbacik, we agree with the trial court that Appellant's argument is unavailing. Despite his contention, the Commonwealth was not required to show that the trooper sustained bodily injury, only that Appellant attempted to cause such. A jury could infer Appellant's intent to attempt causing injury based on the circumstances described above. Therefore, no relief is due.

In his next issue, Appellant asserts that the court erred in denying his motion to dismiss pursuant to Rule 600. "Our standard of review in evaluating speedy trial issues is whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party." *Commonwealth v. Womack*, 315 A.3d 1229, 1237 (Pa. 2024) (citation omitted). Further, "[a]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will[,] discretion is abused." *Id*. (citation omitted).

By way of background, we note that Rule 600 was enacted to protect a defendant's rights to a speedy trial enshrined in the United States and Pennsylvania constitutions, as well as "society's right to effective prosecution in criminal cases." *Id*. (cleaned up). Our review is conducted cognizant of these dual rights, as well as the Commonwealth's duty "to restrain those guilty of crime and to deter those contemplating it." *Id*. (cleaned up). The rule itself provides, in pertinent part, as follows:

**(A) Commencement of Trial; Time for Trial**

(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

. . . .

**(C) Computation of Time**

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

. . . .

(3)(a) When a judge or issuing authority grants or denies a continuance:

(i) the issuing authority shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance; and

(ii) the judge shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance. The judge also shall record to which party the period of delay caused by the continuance shall be attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule.

. . . .

**(D) Remedies**

(1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600.

As succinctly explained by our Supreme Court, a "defendant who has not been brought to trial within the time specified in Rule 600(A) may, at any time prior to trial, file a written motion requesting that the charges be dismissed with prejudice on the ground that the rule has been violated." *Commonwealth v. Harth*, 252 A.3d 600, 615 (Pa. 2021) (cleaned up). Then, "[i]f the trial court determines that the Commonwealth violated Rule 600, it shall dismiss the charges and discharge the defendant." *Id*. (cleaned up).

In deciding Appellant's Rule 600 motion, the trial court found that because the complaint was filed on February 29, 2020, the mechanical run date was March 1, 2021. *See* Memorandum Opinion, 9/22/23, at 3. It then thoroughly reviewed the history of continuances in the matter, finding a total of 171 days excludable due to judicial emergencies arising from the COVID-19 pandemic. *Id*. at 3-4. The court also determined that 201 days were excluded, for the period of March 3, 2021 through September 20, 2021, based on a prior court order scheduling trial in the aftermath of the pandemic and stating particularly that the delay was not attributable to either party. *Id*. at 4. The court then excluded 165 days from calculation for the period of September 20, 2021 through March 4, 2022, based on two motions to continue filed by the defense. *Id*. at 5-6. Finally, it excluded 129 days, March 4, 2022 through July 22, 2022, after the court entered an order during a pre-trial conference, noting that there were additional issues to address before trial could commence, and which specifically provided that the time was not to be held against the Commonwealth. *Id*. at 6.

Based on the above, the trial court calculated an adjusted run date of December 29, 2022, more than four months after the date the Rule 600 motion was filed. *Id*. at 7. It further concluded that for all relevant periods, the delays occurred despite the Commonwealth's due diligence, either as noted in previous orders or based upon judicial delay. *Id*.

In his brief, Appellant does not contest the time excluded due to the judicial emergency during the pandemic. Rather, he focuses on two particular periods that he believes were required to be included in the Rule 600 calculation. The first is from September 12, 2021 through May 3, 2022, spanning 235 days. *See* Appellant's brief at 13. This delay sprang from a defense continuance, which Appellant acknowledges; however, he argues that the continuance was necessary because he received 500 new photographs from the Commonwealth only ten days before trial was set to begin. *Id*. Appellant further highlights that this occurred after the Commonwealth had twice stated on the record at prior conferences that all discovery had been disclosed. *Id*. He asserts, rather cursorily, that the Commonwealth's actions in this circumstance do "not support a finding of reasonable due diligence[.]" *Id*.

The second time frame Appellant challenges is that from February 14, 2022 through September 23, 2022, a total of 222 days, some of which overlaps with his contention above.[4] *Id*. at 14-15. Specifically, he asserts

---

[4] Appellant filed his Rule 600 motion on July 20, 2022. Accordingly, although he contends that the time between then and September 23, 2022 should be included, the law is clear that the time during which a court decides a Rule 600 motion is not included. *See*, *e.g.*, *Commonwealth v. Brown*, 875 A.2d 1128, 1140 (Pa.Super. 2005) (stating that the time taken by the court to decide a Rule 600 motion "renders the time excludable"). Therefore, we treat this challenge as being for the period from February 14, 2022 through July 19, 2022.

that during this period, "the Commonwealth began an unnecessary, unfounded[,] and unsupported effort to remove Judge Sponseller from the case . . . through a frivolous motion to reconsider[.]" ***Id***. (some capitalization altered). Appellant insists that the Commonwealth did not introduce evidence or testimony concerning its motion, but rather "sought to make unfounded allegations of conflict in an attempt to deny Appellant his counsel of choice." ***Id***. at 15.

As additional background, the second period Appellant asserts should have been included in the Rule 600 calculation comprised the delay based upon the Commonwealth's motion requesting Judge Sponseller to recuse, as well as pending motion for reconsideration. More particularly, the Commonwealth filed the recusal motion on February 14, 2022, after Judge Sponseller granted a motion in *limine* in Appellant's favor and refused to oblige the Commonwealth's oral request that defense counsel be removed for a potential conflict of interest.[5] Judge Sponseller scheduled a hearing for April,

_____

[5] The motion in *limine* sought to preclude testimony from the individual who had provided the firearm in question to Appellant as part of a straw purchase. Defense counsel represented this individual for criminal charges arising from that transaction along with Appellant in the instant case, but argued that any testimony as to how Appellant received the firearm was irrelevant to Appellant's charges arising from carrying without a license and attempted murder. Judge Sponseller granted the motion in *limine* on the basis that the testimony would be irrelevant, or of such little probative value as to be unduly prejudicial to Appellant. ***See*** Opinion and Order of Court, 3/22/22, at 16-31. Thus, he deemed that there was no conflict of interest requiring removal of defense counsel.

but before then, held an *in camera* meeting with the District Attorney and defense counsel. Therein, the District Attorney presented a letter from Samuel C. Stretton, Esquire, a purported legal ethics expert, suggesting that the court was violating its duties by permitting counsel to remain in the case and granting the motion in *limine*.

The end result of the Commonwealth's filing was that Judge Sponseller entered an opinion and order on March 22, 2022, recusing from the matter, although he directed significant criticism towards the District Attorney's actions. **See** Opinion and Order of Court, 3/22/22, at 44 (discussing Rule 2.11(A) of the Model Code of Judicial Conduct and concluding that based on the accusations from the Commonwealth, the court's impartiality may reasonably be questioned). After the case was reassigned to Judge Shank, several hearings were held concerning the Commonwealth's motion for reconsideration as to Judge Sponseller's ruling on the motion in *limine*, including one on September 28, 2022, after Appellant filed the Rule 600 motion. Judge Shank ultimately denied the Commonwealth's reconsideration request.

In light of the specific challenges raised by Appellant, and after an exhaustive review of the record, we cannot conclude that the trial court abused its discretion in denying Appellant's Rule 600 motion. With regard to Appellant's first challenged period, we note that this arose from a defense continuance request after Appellant received additional discovery from the

Commonwealth. Critically, since the trial court was concerned that the delay would have potential speedy trial implications, it performed a colloquy prior to granting Appellant's motion to continue. Appellant understood that the time from the continuance would be excluded for purposes of Rule 600 and yet agreed to pursue the continuance. *See* Opinion and Order of Court, 3/22/22, at 4; *see also* Order of Court, 9/16/21 (indicating that the trial court was satisfied after performing a colloquy that Appellant "knowingly and intelligently waived his rights under Rule 600"). Therefore, Appellant cannot now claim that this delay was caused by the Commonwealth. *See* Pa.R.Crim.P. 600(c)(1) (excluding from computation delay unless it was "**caused by the Commonwealth** when the Commonwealth has failed to exercise due diligence" (emphasis added)).

Concerning Appellant's second argument that slightly more than seven months should have been included based on the Commonwealth's pursuit of Judge Sponseller's recusal and reconsideration of a motion in *limine*, we are not convinced that the court erred in excluding the time. Initially, Appellant proffers no authority for the proposition that this time must be included merely because it was a Commonwealth pre-trial filing. This is especially true where, as here, the Commonwealth was given relief as to the recusal matter, albeit under protest of the trial court. *Accord Commonwealth v. Burno*, 154 A.3d 764, 794 (Pa. 2017) (concluding that the Commonwealth acted with due diligence when it received an unfavorable ruling on a motion filed by the

defendant, timely moved for reconsideration, and timely appealed denial of reconsideration). Further, as to the motion in *limine*, although the Commonwealth was ultimately unsuccessful on its request for reconsideration, there is no indication that it lacked due diligence while prosecuting the claim. Indeed, Judge Shank, who decided both the reconsideration motion and the Rule 600 motion, specifically determined that the Commonwealth exercised due diligence at all relevant times. Hence, Appellant was not entitled to dismissal of his charges.

Appellant's next claim is that the court erred in dismissing Excused Juror after the first day of trial. "The decision to discharge a juror is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. This discretion exists even after the jury has been impaneled and the juror sworn." **Commonwealth v. Marrero**, 217 A.3d 888, 890 (Pa.Super. 2019) (citation omitted). Further, "the trial judge, in his sound discretion, may remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired." **Id**. (citation omitted).

In arguing that the trial court erred in dismissing Excused Juror, Appellant recounts that Excused Juror indicated to the court, upon questioning, that she could be fair and impartial. **See** Appellant's brief at 18. He contends that removal cost him a favorable juror and effectively tainted

the jury pool by implicitly signifying to them that the court would not tolerate criticism of law enforcement. *Id*.

The trial court acknowledged that Excused Juror informed that she could remain fair and impartial. *See* Trial Court Opinion, 3/18/24, at 14-15. However, the court stated that it released her from service because she violated a court instruction not to discuss the case with anyone, which was given not only at jury selection, but was the last thing told to jurors before being excused after the first day of testimony. *Id*. at 15. The court further stated that it had serious concerns over Excused Juror's truthfulness when she lied about the number of DUI convictions she had on the *voir dire* questionnaire, and was persuaded by the prosecutor who indicated that the Commonwealth would have stricken Excused Juror during the selection process had it known the same. *Id*. at 15-16.

We find no abuse of discretion with the court's decision. Excused Juror openly acknowledged that she was dishonest about her convictions during selection and disregarded multiple court instructions about refraining from discussing the case. Under these circumstances, there was sufficient reason for the court to be convinced "that the juror's ability to perform [her] duty . . . [was] impaired." *Marrero*, 217 A.3d at 890. Thus, in contravention to how Appellant framed the issue, it is clear that the court did not dismiss Excused Juror simply because she "showed distrust of state police." Appellant's brief at 4. No relief is due.

Finally, Appellant argues that the trial court erred in concluding that certain of his offenses did not merge for sentencing purposes. This challenge implicates the legality of his sentence, and as such "our standard of review is *de novo* and our scope of review is plenary." ***See Commonwealth v. Watson***, 228 A.3d 928, 941 (Pa.Super. 2020).

This Court has previously explained:

Merger of criminal sentences is governed by § 9765 of the Pennsylvania Sentencing Code, which provides as follows:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. As this Court has noted, the language of the legislature is clear. The only way two crimes merge for sentencing is if all elements of the lesser offense are included within the greater offense. [***See***] ***Commonwealth v. Cianci***, 130 A.3d 780, 782 (Pa.Super. 2015) (stating that the "relevant question in [a] merger analysis now is whether person can commit one crime without also committing [the] other crime and vice-versa, regardless of whether [the] crimes arose from same set of facts; if [the] elements differ, under [the] legislative mandate of Section 9765, [the] crimes do not merge"). Finally, if both crimes require proof of at least one element that the other does not, then the sentences do not merge.

***Commonwealth v. Merced***, 308 A.3d 1277, 1282 (Pa.Super. 2024) (some brackets and quotation marks removed).

Appellant specifically contends that two of his convictions, namely attempted murder of a law enforcement officer and assault of a law

enforcement officer – discharge firearm, legally merge.[6] **See** Appellant's brief at 19. As recounted above, with respect to a conviction for attempted homicide, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). Further, "[a] person commits murder of a law enforcement officer of the first degree [when he] intentionally kills a law enforcement officer while in the performance of duty knowing the victim is a law enforcement officer." 18 Pa.C.S. § 2507(a). As to Appellant's assault conviction, "[a] person commits a felony of the first degree [when he] attempts to cause or intentionally or knowingly causes bodily injury to a law enforcement officer, while in the performance of duty and with knowledge that the victim is a law enforcement officer, by discharging a firearm." 18 Pa.C.S. § 2702.1(a)(1).

With regard to his merger argument, Appellant asks us to find distinguishable a non-precedential decision on point, **Commonwealth v. Sargent**, 290 A.3d 698, 2022 WL 17885014 (Pa.Super. 2022) (non-

---

[6] In the questions presented, Appellant also listed as to this issue that aggravated assault of a law enforcement officer would merge with the other offenses. **See** Appellant's brief at 4-5. However, in the argument section of his brief, he does not discuss the elements of aggravated assault or otherwise take any further steps to develop this argument. Therefore, we find this particular position waived. **See**, **e.g.**, **Commonwealth v. Westlake**, 295 A.3d 1281, 1288 n.10 (Pa.Super. 2023) ("Appellant's undeveloped argument in this regard results in waiver of the issue.").

precedential decision). There, this Court compared the pertinent statutes, holding:

> [R]eview of the elements of the two crimes reveals at least one element in each that is not present in the other. Specifically, assault of a law enforcement officer requires the discharge of a firearm. Criminal attempt to murder a law enforcement officer requires a specific intent to kill. Because the two crimes each have an additional element not included in the other offense, they do not merge for sentencing purposes.

*Id*. at *4 (cleaned up). Appellant argues that here, unlike in *Sargent*, the actions underlying the convictions at issue all arose from a single criminal act, and hence the crimes should merge. *See* Appellant's brief at 21.

Although the holding in *Sargent* is not binding, we find it persuasive, as did the trial court. *See* Trial Court Opinion, 3/18/24, at 20. Since attempted murder requires a specific intent to kill and assault of a law enforcement officer requires discharge of a firearm, each crime contains at least one different element from the other, and thus they do not merge pursuant to § 9765. Essentially, Appellant asks us to conclude that because there was a single act in question that happened to satisfy the elements of the two crimes, they must merge. However, as noted above, the "relevant question in merger analysis now is whether [a] person **can** commit one crime without also committing [the] other crime and vice-versa, regardless of whether [the] crimes arose from same set of facts[.]" *Cianci*, A.3d at 782 (emphasis in original). Since a person can attempt to kill a law enforcement officer without discharging a firearm, and likewise a person can discharge a

- 23 -

firearm at an officer without the specific intent to kill, neither of these crimes merges into the other.

In sum, none of the issues raised by Appellant garners him relief. We therefore have no cause to disturb his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/12/2024